DEAN A. PAPPAS (SBN #115140)
ROPERS, MAJESKI, KOHN & BENTLEY, P.C.
1001 Marshall Street
Suite 500
Redwood City, CA 94063
Telephone:     (650) 364-8200
Facsimile:     (650) 780-1701
Email: dpappas@rmkb.com

JUNG H. PARK (SBN # 209473)
GEOFFREY W. HEINEMAN[1]
ROPERS, MAJESKI, KOHN & BENTLEY, P.C.
750 Third Avenue, 25th Floor
New York, New York 10022
Telephone:     (212) 668-5927
Facsimile      (212) 668-5929
Email: jungpark@rmkb.com
           gheineman@rmkb.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAVIGATORS INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>DIALOGIC, INC. formerly known as VERAZ NETWORKS INC. and DOES 1-50,<br><br>Defendants. | CASE NO. 13-cv-5954<br><br>**COMPLAINT FOR DECLARATORY RELIEF**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Navigators Insurance Company ("Navigators"), by its attorneys, Ropers, Majeski, Kohn & Bentley, as and for its complaint against defendant Dialogic, Inc., formerly known as Veraz Networks Inc. ("Veraz"), alleges as follows:

---

[1] A *pro hac vice* application will be submitted for Geoffrey Heineman.

RC1/7201342.3/JP5        - 1 -        COMPLAINT

## NATURE OF ACTION

1. Navigators brings this action for a declaratory judgment to determine the respective rights and obligations of the parties under an excess insurance policy issued by Navigators to Veraz, a company which later merged with or was acquired by Dialogic Corporation, which then changed to Dialogic, Inc. ("Dialogic"). This action arises out of Dialogic's request for defense costs and indemnification from Navigators under an Excess Policy issued by Navigators to Veraz for the policy period of April 4, 2007 to April 4, 2008 (the "2007 Navigators Excess Policy").

2. A dispute has arisen as to whether a certain claim submitted by Dialogic triggers the 2007 Navigators Excess Policy and is within the scope of coverage of the 2007 Navigators Excess Policy.

3. Navigators thus brings this action for a declaration that no coverage is available under the 2007 Navigators Excess Policy in connection with the claim submitted by Dialogic.

4. Navigators demands a jury trial of any factual issues.

## THE PARTIES

5. Navigators is an insurance company organized and existing under the laws of the State of New York and having a principal place of business in Stamford, Connecticut.

6. Dialogic is a corporation organized and existing under the laws of the State of Delaware and having a principal place of business in Milpitas, California.

7. Upon information and belief, DOES 1-50 are parties actually or potentially interested in matters related to the issuance of the 2007 Navigators Excess Policy described herein. Navigators does not know the true names or capacity of the defendants sued herein as DOES 1-50, and therefore sues said defendants by such fictitious names. Navigators will amend

this Complaint if and when said defendants' true names and capacities become known to Navigators.

**JURISDICTION**

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332(a) on the basis of diversity of citizenship as Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000.

**FACTS**

The Navigators Policy

9. Navigators issued to Veraz an Excess Financial Products Insurance Policy, bearing policy number NY07DOL233080NV (the "2007 Navigators Excess Policy"), for the policy period April 4, 2007 to April 4, 2008.

10. The 2007 Navigators Excess Policy is a claims-made policy and is excess to the primary Executive Advantage Policy issued by Liberty Insurance Underwriters Inc. ("Liberty"), bearing policy number DO3S-545017-001, for the policy period April 4, 2007 to April 4, 2008 (the "2007 Liberty Policy").

11. The 2007 Navigators Excess Policy provides a $5,000,000 aggregate Limit of Liability in excess of the $5,000,000 aggregate Limit of Liability of the 2007 Liberty Policy. The 2007 Liberty Policy also includes a $100,000 retention under Insuring Agreement 1.2 and a $250,000 retention under Insuring Agreement 1.3.

The Claim

12. By letter dated April 25, 2008, Veraz notified Liberty of a matter that it was tendering as a Notice of Circumstance (the "2008 Notice of Circumstance") in accordance with Endorsement No. 10 of the 2007 Liberty Policy.

13. By letter dated May 14, 2008, Liberty advised Veraz that since no Claim had been made against Veraz, coverage was not available under the 2007 Liberty Policy. Liberty agreed, however, to accept the information submitted as a Notice of Circumstance that could later give rise to a Claim against Veraz, and reserved all rights and defenses under the 2007 Liberty Policy.

14. By letter July 15, 2008, Navigators adopted Liberty's coverage position for the 2008 Notice of Circumstance as set forth in Liberty's letter dated May 14, 2008, and specifically reserved all of its rights and defenses under the 2007 Navigators Excess Policy.

15. In or around May 2010, Veraz entered into a settlement agreement whereby the matter giving rise to the 2008 Notice of Circumstance was resolved.

16. In or about June 2010, Veraz entered into a settlement agreement with Liberty whereby in exchange for certain payments, Veraz released Liberty from all liability for Defense Costs relating to the matter underlying the 2008 Notice of Circumstance (the "Veraz/Liberty Settlement").

17. Upon information and belief, by e-mail dated December 1, 2011, Dialogic submitted a Claim (the "2011 Claim") to Liberty under another Liberty Executive Advantage Policy ("2010 Liberty Policy") issued to Dialogic, Inc., formerly known as Veraz Networks, Inc. The 2010 Liberty Policy bears policy number DO3S-545017-004 and has a policy period of April 4, 2010 through April 4, 2012.

18. By letter dated January 25, 2012, Liberty acknowledged receipt of and denied coverage for the 2011 Claim under the 2010 Liberty Policy based on the Prior Acts Exclusion. Although Dialogic did not submit the 2011 Claim to Liberty seeking coverage under the 2007 Liberty Policy, Liberty also took the position that the 2011 Claim alleges the same Interrelated Wrongful Acts as the 2008 Notice of Circumstance that was submitted under the 2007 Liberty Policy and therefore, coverage for the 2011 Claim was denied under the 2007 Liberty Policy due

to the releases obtained under the Veraz/Liberty Settlement. Liberty also raised a number of additional reasons why the 2011 Claim may not be covered under the 2007 Liberty Policy and reserved all of its rights and defenses under the policies.

19. By letter dated February 8, 2012, Dialogic challenged Liberty's January 25, 2012 denial letter. Dialogic insisted that the 2011 Claim should be covered by the 2010 Liberty Policy and not by the 2007 Liberty Policy. Specifically, Dialogic represented that the 2011 Claim did not arise from the same set of facts or circumstance as the 2008 Notice of Circumstance.

20. Upon information and belief, on February 13, 2012, Dialogic submitted additional documentation concerning matters underlying and/or related to the 2011 Claim and Dialogic requested that Liberty reconsider its position.

21. By letter dated March 30, 2012, Liberty retracted its denial of the 2011 Claim based on the Prior Acts Exclusion under the 2010 Liberty Policy. Liberty also retracted its position that the Veraz/Liberty Settlement barred the 2011 Claim. Liberty, however, maintained its position that the 2011 Claim is related to the 2008 Notice of Circumstance and therefore, coverage for the 2011 Claim should be provided by the 2007 Liberty Policy. Accordingly, Liberty agreed, pursuant to a reservation of its rights, to provide defense costs and indemnification to Dialogic for the 2011 Claim under the 2007 Liberty Policy.

22. Thereafter, Dialogic submitted the 2011 Claim to Navigators for coverage under the 2007 Navigators Excess Policy.

23. By letter dated May 22, 2012, Navigators acknowledged receipt of the 2011 Claim submitted under the 2007 Navigators Excess Policy.

24. Contrary to what Dialogic insisted upon with Liberty, Dialogic took the position with Navigators that it believed that the 2011 Claim related back to the 2008 Notice of Circumstance and thus should be covered under the 2007 Navigators Excess Policy.

25. By letter dated May 22, 2012, Navigators declined coverage for the 2011 Claim under the 2007 Navigators Excess Policy based on two reasons: (i) coverage under the 2007 Navigators Excess Policy had not been implicated because the 2007 Liberty Policy had not yet exhausted; and (ii) the Wrongful Acts alleged in the 2011 Claim did not appear to be the same or related to those underlying the 2008 Notice of Circumstance as the two matters concerned different claimants, different individuals, different acts, and different matters. As such, Navigators concluded that the 2011 Claim is not a Claim first made during the 2007 Navigators Excess Policy and therefore coverage for the 2011 Claim was not available under the 2007 Navigators Excess Policy.

26. In the May 22, 2012 letter, Navigators also advised Dialogic that since the basis for denying coverage for the 2011 Claim was dispositive, it would not detail the potential additional coverage issues arising under the 2007 Liberty Policy and the 2007 Navigators Excess Policy, and reserved all of its rights and defenses.

27. By letter dated October 8, 2012, Dialogic requested that Navigators reconsider its May 22, 2012 coverage position denying coverage for the 2011 Claim. Again, contrary to what Dialogic had insisted upon with Liberty, Dialogic again advised Navigators that it believed that the 2011 Claim related back to the 2008 Notice of Circumstance and thus should be covered under the 2007 Navigators Excess Policy.

28. By letter dated December 4, 2012, Navigators advised Dialogic that for the reasons previously detailed in the May 22, 2012 letter which grounds were reiterated, Navigators was not modifying its denial of coverage for the 2011 Claim. Navigators also continued to reserve its rights and defenses under the 2007 Navigators Excess Policy.

29. In response to a January 9, 2013 e mail communication, Navigators by letter dated April 2, 2013, again advised Dialogic that for the reasons detailed in the May 22, 2012, letter

which reasons were again reiterated, Navigators was denying coverage for the 2011 Claim. Navigators also continued to reserve all of its rights and defenses under the 2007 Navigators Excess Policy.

30. An actual case or controversy exists between the parties concerning the rights and obligations of the parties under the 2007 Navigators Excess Policy in connection with the 2011 Claim.

### FIRST CAUSE OF ACTION
### Declaratory Relief

31. Navigators repeats and realleges each and every allegation set forth in paragraphs 1 through 30 hereof as if set forth at length herein.

32. Dialogic submitted the 2011 Claim to Navigators seeking coverage under the 2007 Navigators Excess Policy as a matter purportedly related to the 2008 Notice of Circumstance.

33. Navigators has denied coverage for the 2011 Claim on the basis that: (i) coverage under the 2007 Navigators Excess Policy has not yet been implicated because the 2007 Liberty Policy has not yet exhausted; and (ii) the Wrongful Acts alleged in the 2011 Claim did not appear to be the same or related to those underlying the 2008 Notice of Circumstance as the two matters concerned different claimants, different individuals, different acts, and different matters and therefore the 2011 Claim is not a Claim first made during the 2007 Navigators Excess Policy Period.

34. The 2007 Navigators Excess Policy follows form to the 2007 Liberty Policy. Section III of the 2007 Navigators Excess Policy provides in part as follows (emphasis in the original):

> **A.** This policy is subject to the same warranties, terms, conditions, definitions, exclusions and endorsements (except as regards the premium, the amount and Limits of Liability, and duty to defend and except as otherwise provided herein) as are contained in or as may be added to

the policy of the Primary Insurer, together with all the warranties, terms, conditions, exclusions and limitations contained in or added by endorsement to any **Underlying Excess Policy**(ies).

  **B.** In no event shall this policy grant broader coverage than is provided by the most restrictive Primary or underlying Excess Policy(ies).

35. The Insuring Agreement of the 2007 Liberty Policy provides as follows (emphasis in the original):

> **1.1 Insured Persons' Liability:** The Insurer shall pay on behalf of the **Insured Persons** all **Loss** which they shall become legally obligated to pay as a result of a Claim first made during the **Policy Period** or **Discovery Period**, if applicable, against the **Insured Persons** for a **Wrongful Act** which takes place before or during the **Policy Period**.
>
> **1.2 Insured Organization Reimbursement:** The Insurer shall pay on behalf of the **Insured Organization** all **Loss** which it is permitted or required by law to indemnify the **Insured Persons** as a result of a **Claim** first made during the **Policy Period** or **Discovery Period**, if applicable, against the **Insured Persons** for a **Wrongful Act** which takes place before or during the **Policy Perio**d.
>
> **1.3 Securities Action Liability:** The Insurer shall pay on behalf of the **Insured Organization** all **Loss** which it shall become legally obligated to pay as a result of a **Securities Action** first made during the **Policy Period** or **Discovery period**, if applicable, against the **Insured Organization** for a **Wrongful Act** which takes place before or during the **Policy Period**.

36. Section 25.12 of the 2007 Liberty Policy defines Loss as (emphasis in the original):

> **"Loss"** means sums which the **Insured Persons** or, with respect to Insuring Agreement 1.3, the **Insured Organization** are legally obligated to pay solely as a result of any Claim insured by this Policy, including **Defense Costs**, damages, judgment, settlement amounts, legal fees and costs awarded pursuant to judgments, punitive or exemplary damages, and the multiple portion of any multiplied damage award. **Loss** shall not include fines, penalties, taxes, dividends or distribution of profits or other assets of the **Insured Organization**, any amount allocated to uncovered loss

pursuant to Section 13, amounts for which there is no legal recourse against the **Insureds**, or matters uninsurable pursuant to any applicable law.

With respect to any **Claim** alleging that the price or consideration paid or proposed to be paid for the acquisition of any securities issued by or assets owned by any natural person or entity is inadequate, excessive, or improper, **Loss** shall not include the portion of any judgment or settlement relating to the amount by which such price or consideration was changed or modified as a result of such **Claim**.

37. Endorsement No. 10 to the 2007 Liberty Policy provides as follows (emphasis in the original):

**AMEND NOTICE OF CIRCUMSTANCE – 60 Days**

In consideration of the premium charged, it is hereby understood and agreed that **8. Notice of Circumstances or Wrongful Act**, is deleted in its entirety and replaced with the following:

**8.** **Notice of Circumstance or Wrongful Act:** If during the **Policy Period** or **Discovery Period** the **Insureds** become aware of any circumstance or **Wrongful Act** that reasonably may be expected to give rise to a Claim, and if such circumstance or Wrongful Act is reported to the **Insurer** during or up to 60 days after the **Policy Period** or Discovery Period in writing with details as to the nature and date of such circumstance or **Wrongful Act**, the identity of any potential claimant, the identity of any **Insured Person** involved in such circumstance or **Wrongful Act**, and the manner in which the **Insured** first became aware of such circumstance or **Wrongful Act** shall be deemed under this Policy to be a **Claim** made during the **Policy Period** in which the circumstance or **Wrongful Act** was first duly reported to the Insurer.

Any circumstances or **Wrongful Acts** reported during the **Discovery Period** shall be subject to the limitations set forth in Section 15.

All other terms, conditions and exclusions of this Policy remain unchanged.

38. Section 9.2 of the 2007 Liberty Policy provides that "[a]ll **Claims** arising from the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be deemed one **Claim** and subject to a

single limit of liability. Such **Claim** shall be deemed first made on the date the earliest of such **Claims** is first made, regardless of whether such date is before or during the **Policy Period**." (Emphasis in the original).

39. Section 25.20 of the 2007 Liberty Policy (and as amended by Endorsement No. 11) defines Wrongful Acts as (emphasis in the original):

> (a) any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty, actually or alleged committed or attempted by the Insured Persons in their capacities as such or in an **Outside Position**, or, with respect to Insuring Agreement 1.3, by the **Insured Organization**; or
>
> (b) any matter claims against the **Insured Persons** by reason of their status as an **Insured Persons**.

40. Section 25.11 of the 2007 Liberty Policy defines Interrelated Wrongful Acts as "**Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally connected facts, circumstances, situation, events, transactions, or causes." (Emphasis in the original).

41. The 2011 Claim does not allege the same Wrongful Acts or Interrelated Wrongful Acts as the 2008 Notice of Circumstance and therefore, the 2011 Claim and the 2008 Notice of Circumstance do not constitute a single Claim deemed first made during the policy period of the 2007 Navigators Excess Policy.

42. As a result of the foregoing, no coverage is available to Defendant Dialogic for the 2011 Claim, and Navigators is entitled to a declaration that Navigators has no obligation to pay any Loss including Defense Costs to Dialogic in connection with the 2011 Claim.

## SECOND CAUSE OF ACTION

### Declaratory Relief

43. Navigators repeats and realleges each and every allegation set forth in paragraphs 1 through 42 hereof as if set forth at length herein.

44. Dialogic submitted the 2011 Claim to Navigators seeking coverage under the 2007 Navigators Excess Policy as a matter purportedly related to the 2008 Notice of Circumstance.

45. Navigators has denied coverage for the 2011 Claim on the basis that: (i) coverage under the 2007 Navigators Excess Policy has not yet been implicated because the 2007 Liberty Policy had not yet exhausted; and (ii) the Wrongful Acts alleged in the 2011 Claim did not appear to be the same or related to those underlying the 2008 Notice of Circumstance as they concern different claimants, different individuals, different acts, and different matters and therefore the 2011 Claim is not a Claim first made during the 2007 Navigators Excess Policy Period.

46. The 2007 Navigators Excess Policy follows form to the 2007 Liberty Policy. Section III of the 2007 Navigators Excess Policy provides in part as follows (emphasis in the original):

> **A.** This policy is subject to the same warranties, terms, conditions, definitions, exclusions and endorsements (except as regards the premium, the amount and Limits of Liability, and duty to defend and except as otherwise provided herein) as are contained in or as may be added to the policy of the Primary Insurer, together with all the warranties, terms, conditions, exclusions and limitations contained in or added by endorsement to any **Underlying Excess Policy**(ies).
>
> **B.** In no event shall this policy grant broader coverage than is provided by the most restrictive Primary or underlying Excess Policy(ies).

47. Section II.A. of the 2007 Navigators Excess Policy provides in part as follows: "It is expressly agreed that liability for any loss shall attach to the underwriters only after the Primary and Underlying Excess Insurers shall have duly admitted liability, and shall have paid the full amount of their respective liability…".

48. Endorsement No. 4 (EXCESS NON-DROP DOWN ENDORSEMENT) of the 2007 Navigators Excess Policy provides in part as follows:

> It is further agreed that the Underwriters shall not drop down as excess of any sublimit of liability set forth in the **Primary Policy**. Pursuant to Section II., LIMIT OF LIABILITY, of this excess Policy, liability for any loss shall attach to the Underwriters only after the Underlying Primary and excess insurers shall have duly admitted liability and paid the full amount of their respective aggregate Limits of Liability, as reflected in their declarations.

49. Upon information and belief, Liberty has not duly admitted liability for the 2011 Claim and paid the full Limit of Liability of the 2007 Liberty Policy.

50. If this Court determines that the 2011 Claim is interrelated to the matter underlying the 2008 Notice of Circumstance such that together they constitute a single Claim, Liberty may have no liability for the 2011 Claim as a result of the Veraz/Liberty Settlement.

51. By reason of the foregoing, if this Court determines that the 2011 Claim is interrelated to the matter underlying the 2008 Notice of Circumstance, Navigators is entitled to a declaration that no coverage exists under the 2007 Navigators Excess Policy unless and until Liberty has duly admitted liability for the 2011 Claim and paid the full Limit of Liability of the 2007 Liberty Policy.

### THIRD CAUSE OF ACTION
**Declaratory Relief**

52. Navigators repeats and realleges each and every allegation set forth in paragraphs 1 through 51 hereof as if set forth at length herein.

53. Dialogic submitted the 2011 Claim to Navigators seeking coverage under the 2007 Navigators Excess Policy.

54. The Named Insured on the 2007 Navigators Excess Policy is Veraz Networks, Inc.

55. Dialogic, Inc. is not the Named Insured of nor was Dialogic an Insured in the 2007 Navigators Excess Policy.

56. By reason of the foregoing, if this Court determines that the 2011 Claim is interrelated to the matter underlying the 2008 Notice of Circumstance, Navigators is entitled to a declaration that to the extent the 2011 Claim concerns Wrongful Acts of Dialogic Corporation or Dialogic, Inc., prior to and/or subsequent to the acquisition of or merger with Veraz, no coverage exists for such acts under the 2007 Navigators Excess Policy.

**WHEREFORE**, Navigators prays for judgment as follows:

a. On the First Cause of Action, a Declaration that no coverage exists under the 2007 Navigators Excess Policy and Navigators has no obligation to pay any Loss including Defense Costs in connection with the 2011 Claim;

b. On the Second Cause of Action, if this Court determines the 2011 Claim is interrelated to the matter underlying the 2008 Notice of Circumstance, a Declaration that no coverage exists under the 2007 Navigators Excess Policy unless and until Liberty has duly admitted liability for the 2011 Claim and paid the full Limit of Liability of the 2007 Liberty Policy;

c. On the Third Cause of Action, if this Court determines the 2011 Claim is interrelated to the matter underlying the 2008 Notice of Circumstance, a Declaration that to the extent the 2011 Claim concerns Wrongful Acts of Dialogic Corporation or Dialogic, Inc., prior to and/or subsequent to the acquisition or merger of Veraz, no coverage exists for such acts under the 2007 Navigators Excess Policy; and

d. for such other and further relief as the Court deems just and proper including the costs of this action.

| | |
|---|---|
| Dated: December 26, 2013 | ROPERS, MAJESKI, KOHN & BENTLEY |
| | By: /s/ Jung H. Park |
| | JUNG H. PARK |
| | Attorneys for Plaintiff |