SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
MARTIN D. KATZ, Cal. Bar No. 110681
mkatz@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, California  90067-6017
Telephone:  310.228.3700
Facsimile:   310.228.3701

Attorneys for Defendant
DIALOGIC INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAVIGATORS INSURANCE COMPANY,<br><br>              Plaintiff,<br><br>    v.<br><br>DIALOGIC INC. formerly known as VERAZ NETWORKS INC. and DOES 1-50,<br><br>             Defendants. | Case No.  13-cv-05954 RMW (PSG)<br><br>**DECLARATION OF MARTIN D. KATZ IN SUPPORT OF DEFENDANT DIALOGIC INC.'S MOTION TO DISMISS FOR FAILURE TO JOIN INDISPENSABLE PARTIES; OR, IN THE ALTERNATIVE, FOR AN ORDER COMPELLING JOINDER**<br><br>Fed. R. Civ. P. 12(b)(6) & 19<br><br>*[Notice of Motion and Motion to Dismiss filed concurrently herewith]*<br><br>Hearing Date:  May 2, 2014<br>Hearing Time:  9:00 a.m.<br>Courtroom:  6 (4th Flr.)<br><br>Trial Date:  n/a |

**DECLARATION OF MARTIN D. KATZ**

I, Martin D. Katz, declare as follows:

1. I am an attorney, admitted to practice before this Court. I am a partner in the law firm Sheppard, Mullin, Richter & Hampton LLP, counsel of record herein for Defendant Dialogic Inc. (formerly known as Veraz Networks, Inc.) ("Dialogic"). This declaration is submitted in support of Dialogic's concurrently filed Motion to Dismiss for Failure to Join Indispensable Parties; or, in the Alternative, For an Order Compelling Joinder ("Motion"). Unless otherwise stated, I have first-hand knowledge of the matters set forth herein and, if called and sworn as a witness, I could, would and hereby do competently testify as follows:

2. Prior to the filing of this action (and continuing thereafter), I have represented Dialogic in connection with certain aspects of its attempt to secure a commitment from its excess insurers, Plaintiff Navigators Insurance Company ("Navigators") and W.R. Berkley Corporation ("Berkley"), to afford coverage in connection with the claim described below as the 2011 Claim. This has also necessitated interfacing with Dialogic's primary insurer, Liberty Insurance Underwriters Inc. ("Liberty").

2. This dispute involves different insurance policies issued by Dialogic's insurers, Liberty, Navigators and Berkley. It also involves certain underlying claims that trigger one or more these policies and the insurers' coverage decisions in connection therewith. Dialogic considers the underlying claims and the insurers' coverage decisions to be confidential. There are also certain aspects of the insurance policies that Dialogic considers confidential. Accordingly, I have not attached these materials to my declaration. Instead, I have described the salient facts below, most of which are also set forth in the Complaint.

3. From April 4, 2007 to April 4, 2008, Liberty issued a primary insurance policy to Dialogic (the "2007-08 Liberty Primary Policy"). The 2007-08 Liberty Primary Policy obligates Liberty to cover the first $5 million of loss arising from a

"Claim" (after satisfaction of a deductible).  Under a separate policy, Liberty was Dialogic's primary insurer from April 4, 2010 to April 4, 2011 (which was extended by endorsement to April 4, 2012) (the "2010-12 Liberty Primary Policy").)  The 2010-12 Liberty Primary Policy again covers the first $5 million of loss (after satisfaction of a deductible) on terms similar to the 2007-08 Liberty Primary Policy.

4.     During the same policy period as the 2007-08 Liberty Primary Policy – April 4, 2007 to April 4, 2008 – Navigators was Dialogic's first level excess insurer. The Navigators policy in effect during that time (the "2007-08 Navigators Excess Policy") follows form to the 2007-08 Liberty Primary Policy, meaning that if a loss triggers the 2007-08 Liberty Primary Policy, it also triggers the 2007-08 Navigators Excess Policy after exhaustion of the limits of liability of the 2007-08 Liberty Primary Policy.

5.     During the period April 4, 2010 to April 4, 2011, Berkley was Dialogic's first level excess insurer. The excess policy issued by Berkley (the "2010-11 Berkley Excess Policy") follows form to the 2010-12 Liberty Primary Policy, covering the next $5 million of liability for any covered loss after exhaustion of the 2010-12 Liberty Primary Policy.  Section VI.C of the 2010-11 Berkley Excess Policy provides, in pertinent part: "It is understood and agreed that [Berkley's] liability for all losses under this Policy shall attach only if one of the following situations occurs as a condition precedent: (1) Each and all of the Underlying Insurance duly admits liability for the loss and, consequently, pays the full amount of their respective liability. . . ."

6.     Dialogic notified Liberty of a claim (the "2008 Claim") and requested coverage from Liberty under the 2007-08 Liberty Primary Policy.  Liberty ultimately afforded coverage for the 2008 Claim.  Because the $5 million limit of liability applicable to the 2007-08 Liberty Primary Policy was not exhausted by the 2008 Claim, the 2007-08 Navigators Excess Policy was not triggered in connection with that claim.

7. Another claim arose in 2011 (the "2011 Claim"). Dialogic notified Liberty of the claim and requested coverage under the 2010-12 Liberty Primary Policy. Liberty ultimately afforded coverage for the 2011 Claim, but it did so under the 2007-08 Liberty Primary Policy because it asserted that the 2011 Claim was interrelated with the 2008 Claim under the definition of Interrelated Wrongful Acts in the 2007-08 Liberty Primary Policy. The amounts paid by Liberty to date for the 2008 Claim and the 2011 Claim combined do not exceed $5 million, but further amounts may be incurred in connection with the 2011 Claim, thereby implicating the first level excess policy.

8. Both Navigators and Berkley have denied coverage for the 2011 Claim. Although Liberty contends that the 2011 Claim triggered the 2007-08 Liberty Primary Policy, Navigators – whose policy follows form to that Liberty policy – contends that Liberty's decision was erroneous. Navigators asserts that the 2008 Claim and the 2011 Claim are not interrelated and, therefore, the 2011 Claim did not trigger the 2007-08 Liberty Primary Policy (or, as a result, the 2007-08 Navigators Excess Policy). On that basis, Navigators has denied coverage for the 2011 Claim.

9. Berkley has also denied coverage for the 2011 Claim. Berkley claims that the 2011 Claim is interrelated with the 2008 Claim, and, therefore, that the 2011 Claim triggered the 2007-08 policies, not the 2010-11 policies. Berkley also contends that it is not obligated to afford coverage under its policy unless and until Liberty exhausts the coverage afforded for the 2011 Claim under the 2010-12 Liberty Primary Policy, rather than the 2007-08 Liberty Primary Policy.

10. Attached hereto as Exhibit 1 is a true and correct copy of a printout from Liberty's website. This printout reflects that Liberty's corporate headquarters are in New York. Attached hereto as Exhibit 2 is a true and correct copy of a printout from the California Secretary of State's website. This printout reflects that Liberty is incorporated in Illinois.

11. Attached hereto as Exhibit 3 is a true and correct copy of the first page of Berkley's 10-K filing with the Securities Exchange Commission for the fiscal year ended December 31, 2013. This document reflects that Berkley is incorporated in Delaware and maintains its principal offices in Connecticut.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 31st day of March 2014, at Los Angeles, California.

_____
Martin D. Katz